| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------- x<br>**GRANT,**<br>                       **Plaintiff,**<br><br>     **-against-**<br><br>**THE CITY OF NEW YORK, WILLIAM J.**<br>**BRATTON,** *former New York City Police Department*<br>*Police Commissioner, in his individual capacity*, and<br>**LAWRENCE BYRNE,** *former New York City Police*<br>*Department Deputy Commissioner of Legal Matters, in*<br>*his individual capacity*,<br>                       **Defendants.**<br>------------------------------------------------------------------- x | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#: _____<br>DATE FILED: \_9/10/2020\_\_\_\_\_<br><br>**19 Civ. 4334 (ALC)**<br><br><u>**OPINION AND ORDER**</u> |

**ANDREW L. CARTER, JR., District Judge:**

INTRODUCTION

Plaintiff James Grant, a former New York Police Department ("NYPD") officer, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York, William B. Bratton, former NYPD Police Commissioner and Lawrence Byrne, former NYPD Deputy Commissioner of Legal Matters. Plaintiff asserts a claim that defendants deprived him of a property interest in his employment, in violation of his Fourteenth Amendment right to due process, by coercing his resignation from the Department, as well as a claim for municipal liability. Defendants now move to dismiss the complaint, arguing, among other things, that Plaintiff's coerced-resignation due process claim is barred by the availability of an adequate post-deprivation remedy in the form of an Article 78 proceeding, that the individual defendants are shielded from suit by the doctrine of qualified immunity, and that neither Bratton nor Byrne are municipal policymakers. For the reasons that follow, the Court dismisses Plaintiff's complaint.

BACKGROUND

1

Plaintiff James Grant began his career with the NYPD in July 1996. Compl. ¶ 18. As of 2016, Mr. Grant held the position of Deputy Inspector and was the Commanding Officer of the 19th Precinct. Compl. ¶ 21. Deputy Inspector is a rank above Captain that the Police Commissioner has discretion to designate, as well as rescind. Compl. ¶ 25.

In 2015-2016, the FBI was investigating alleged corruption by high-level NYPD officials related to two businessmen, Jeremy Reichberg and Jona Rechnitz. Compl. ¶ 37. Mr. Grant was interviewed in connection with this investigation on February 25, 2016. Compl. ¶ 40. At the time, he did not believe he was a target of the investigation. Compl. ¶ 40.

Then, on April 7, 2016, Mr. Grant received a call from the Captains Endowment Association President, Roy Richter, who said that the NYPD was going to modify and transfer Mr. Grant. Compl. ¶ 42. Mr. Richter said the reason he was given was that news articles had come out about the FBI's investigation of corruption in the NYPD's highest ranks and, in sum and substance, Police Commissioner Bratton had to take some action due to the optics of the news articles. Compl. ¶ 42.

On May 13, 2016, Mr. Richter met with Mr. Grant again. Mr. Richter said that he was told Mr. Grant would be interviewed by the Internal Affairs Bureau ("IAB") the following week and suspended following that interview. Compl. ¶ 44. Mr. Richter also said that Commissioner Bratton had told him that if Mr. Grant went to a department trial and contested those charges, it did not matter what the outcome was, Commissioner Bratton was going to terminate Mr. Grant. Compl. ¶ 44.

On May 20, 2016, Mr. Richter again called Mr. Grant and said that Deputy Commissioner of Legal Matters Lawrence Byrne had told him that Mr. Grant would be demoted and terminated

unless he retired immediately, which necessarily meant having to waive all of his accrued vacation days and compensatory time. Compl. ¶ 45. Waiving such time would have important implications for Mr. Grant's retirement benefits. Mr. Grant, as other officers, was obligated to work overtime when necessary and could only use vacation time when permitted. Compl. 32. In May 2016, he had accrued approximately 83 days of unused vacation and 4,490 hours of unpaid overtime, also known as "compensatory time." Compl. ¶ 33. A standard practice that is permitted within the NYPD for officers of every rank is that prior to their effective retirement date, they are permitted to "run" their accrued vacation days and compensatory time. Compl. ¶ 34. While accrued vacation and compensatory time is "run," an officer receives a regular salary—including raises that may go into effect—and accrues service credit and pension contributions. Compl. ¶ 35. Significant pension and retirement benefits are made available to NYPD officers who retire with twenty years of service credit. Compl. ¶ 36.

Mr. Grant was aware that the Police Commissioner had the unilateral authority to demote him from the position of Deputy Inspector to Captain and the ultimate authority to terminate his employment. A demotion and termination would have significantly impacted Mr. Grant's pension benefits. Compl. ¶ 47. Mr. Grant submitted his forced resignation, which became effective on or about June 21 or 22, 2016—less than a month shy of Mr. Grant attaining twenty years of service credit. Compl. ¶ 48. Had Mr. Grant been allowed, consistent with standard practice, to run his accrued time, he would have been paid his full salary for more than two-and-a-half years; he would have received the benefit of any raises that went into effect during that time; and he would have received pension contributions and accrued service credit that would have greatly increased his pension and other retirement benefits. Compl. ¶ 70.

Thereafter, Mr. Grant was charged with accepting bribes in exchange for providing access to police resources. Compl. ¶ 49. After a 2018 trial, Mr. Grant was found not guilty. Compl. ¶¶ 51-52.

On May 13, 2019, Grant filed this complaint in the instant matter, which alleges that the individual defendants deprived him of his property interest in his retirement benefits without due process in violation of Fourteenth Amendment in violation of 42 U.S.C. § 1983 (first cause of action). Compl. ¶¶ 73-76. It further alleges that the City of New York is liable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for the actions and decisions of the individual defendants, taken in the course of their duties as high-level policymaking officials of the City of New York (second cause of action). Compl. ¶¶ 77-80.

On February 3, 2020, Defendants moved to dismiss the complaint, arguing, among other things, that Plaintiff's coerced-resignation due process claim is barred by the availability of an adequate post-deprivation remedy in the form of an Article 78 proceeding, that the individual defendants are shielded from suit by the doctrine of qualified immunity, and that neither Bratton nor Byrne are municipal policymakers. ECF No. 34. Plaintiff opposed this motion on March 2, 2020. ECF No. 39. On March 9, 2020, Defendants filed a reply memorandum in further support of their motion. ECF No. 40.

LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). But while a plaintiff must demonstrate the plausibility of his claims, he need not show that a judgment in his favor is probable. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Upon consideration of the parties' submissions, the Court concludes that Plaintiff has failed to state a due process claim in light of the availability of the Article 78 process.

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013). "In order to do this, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of *that* right, and third show that the deprivation was effected without due process.'" *Id.* (alteration in original) (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). Here, Defendants do not dispute that Mr. Grant's employment was a property right nor that he was deprived of it. The question is whether such deprivation was made without due process.

"[T]o determine whether a [due process] violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)). The answer turns on whether the Second Circuit's *Giglio v. Dunn*, which involves a claim for due process violation arising from the alleged forced resignation of a tenured teacher from the Mt. Morris school district orchestrated by two superintendents and trustees of the board of education controls. 732 F.2d 1133 (2d Cir. 1984). The Court concludes that it does, and therefore dismisses Plaintiff's claims.

In *Giglio*, the plaintiff alleged that he was harassed by the district superintendent, which precipitated mental health issues that led plaintiff to go on full-time disability leave. *Id.* at 1134. Several months later, plaintiff was given an ultimatum between returning to work or having his position abolished by the board of education. *Id.* When plaintiff said he could not return to work because of his mental health issues, the superintendent and another co-defendant "told him that his position would be abolished at the Board meeting unless he agreed to resign". *Id.* "Plaintiff tendered his resignation a few hours later." *Id*. Plaintiff tried to withdraw his resignation, but the school board rejected this attempt. *Id.* He then filed suit alleging that his resignation had been coerced and that he had been denied due process because a hearing did not precede the coercion. *Id.* The district court dismissed plaintiff's complaint for failure to state a claim, holding that a pre-coercion hearing would have been "not only impractical but virtually impossible," and, further, that Giglio's post-deprivation remedy under Article 78 of the New York Civil Practice Law, "which is an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," provided adequate due process. *Id.*

The Second Circuit affirmed the district court's conclusion that Giglio's post-deprivation remedy in the form of an Article 78 action afforded him sufficient process. "Due process requires only that a hearing be held at a meaningful time and in a meaningful manner." *Id.* at 1135 (citing *Parratt v. Taylor*, 451 U.S. 527, 540, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981)). "[A] pre-coercion hearing was neither feasible nor constitutionally required" because "[a] coerced resignation does not involve a showing of cause; it is simply the submission by an employee to pressure exerted by a superior". *Id.* "[T]here is no factual dispute between the employer and the employee, [so] a hearing is meaningless". *Id*. Rather, "[w]hen an employee resigns, the only possible dispute is

6

whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Id.*

Judge Failla canvassed the cases that preceded and have followed *Giglio* in a recent decision, *Capul v. City of N.Y.*, 2020 WL 2748274, 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27, 2020). Like the instant matter, *Capul* arises from allegedly forced resignations in the wake of the corruption probe regarding businessmen Reichberg and Rechnitz and asks the question whether an Article 78 action provides due process in the context of a forced resignation. Given the analogous factual situations, and the thorough survey of the law at issue, this Court will not duplicate Judge Failla's efforts. This Court agrees with the reasoning set forth in *Capul* that *Giglio* remains good law in this Circuit, is applicable to the instant matter, and mandates the conclusion that the available Article 78 action is sufficient to satisfy the Due Process Clause. As in *Capul*, the Court concludes Plaintiff has failed to state a claim for due process violation.

Because plaintiff did not plausibly allege the deprivation of a constitutional right, the claim against the City of New York also fails. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). In light of this, the Court need not address the question of qualified immunity.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:   New York, New York
           September 10, 2020**

_____
**ANDREW L. CARTER, JR.
United States District Judge**